ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED
MAY 1 2 2005
MICHAEL N. MILBY, CLERK OF COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| V. | § | CRIMINAL NO. H-05-213 |
| MONIQUE MCGILBRA | § § § | |

# INFORMATION

The United States Attorney charges:

## INTRODUCTION

At all times material herein:

1. The City of Houston, Texas ("Houston") was a city located within Harris County in the State of Texas.

2. Houston was headed by an elected Mayor, who appointed senior level officials to head the various departments of the City of Houston as well as to advise and assist him in running the government.

3. The Building Services Department ("BSD") was established by the City of Houston in or about 1999 and was responsible for developing, managing and operating the many properties owned, occupied and operated in Houston.

4. In or about 2001, Houston began preparing for the deregulation of energy markets in the State of Texas. Specifically, because of a change in state law, Houston would be selecting a vendor to provide energy related services. The

BSD was charged with overseeing this process, which included the selection of a vendor that could assemble a team that would both supply energy to Houston and would assist Houston in the Demand Side Management ("DSM") portion of the contract.

5. **MONIQUE MCGILBRA** was appointed and served as the Director of BSD and possessed many powers conferred upon her by law, regulation and custom. As a public official, **MCGILBRA** owed a duty of honest services and fair dealing to the citizens and taxpayers of Houston.

6. **MCGILBRA** oversaw the daily operations of the BSD, including supervising, directly and indirectly, employees of BSD. **MCGILBRA** was responsible for both maintenance and safety of buildings owned by Houston and for new construction of Houston buildings to provide office space for Houston employees and Houston energy services.

7. **MCGILBRA** selected, hired and directed other officials with BSD; substantially participated in the selection of, recommendation of, and negotiation with private vendors to do business and enter into contracts with Houston; and oversaw, managed and administered the performance of work for Houston by private vendors who had obtained contracts with Houston.

8. In contracting for services for Houston, **MCGILBRA** was authorized and

did engage in activities that affected interstate commerce, including the use of the mails and interstate telephone calls.

9. **MCGILBRA**, as all employees of Houston, was precluded from using her official position to secure a special advantage for herself or anyone else.

10. As a senior employee of Houston, each year **MCGILBRA** was required to file a financial disclosure statement, signed and sworn to be a true, correct and complete statement of the information requested therein, disclosing, among other things, any and all gifts or things of value worth over $120.00 received from persons other than family members.

11. As a Houston employee, **MCGILBRA** was prohibited from accepting anything of value from persons doing business with or seeking to do business with Houston.

12. Garland Hardeman was a California-based consultant who specialized in obtaining public contracts on behalf of others.

13. "Contractor, Inc." was an Atlanta-based company involved in general construction consulting, utilities construction, and energy services.

14. The "Development Company" was a developer/contractor in Houston involved in design, construction and servicing of government projects.

## COUNT 1
### (Conspiracy – 18 U.S.C. §371)

A.  **INTRODUCTION**

1. The United States Attorney adopts, re-alleges, and incorporates herein the allegations in Paragraphs 1 through 14 of the introduction of this Information as if fully set out herein.

B.  **THE CONSPIRACY AND ITS OBJECTS**

2. Beginning on or about February 2001 and continuing through in or about April 2003, in the Houston Division of the Southern District of Texas and elsewhere,

**MONIQUE MCGILBRA,**

defendant herein, did knowingly combine, conspire, confederate and agree with other persons known and unknown to the United States Attorney, to execute and attempt to execute a scheme and artifice to defraud and to deprive the City of Houston and its citizens of the intangible right of honest services of their public officials through the use of the mail and interstate wires, in violation of Title 18, United States Code, Sections 1341, 1343 and 1346.

C.  **THE MANNER AND MEANS OF THE CONSPIRACY**

3. It was part of the manner and means of the conspiracy for various contractors doing business or seeking to do business with Houston to induce

4

**MCGILBRA** to use her official position to influence the awarding and administration of contracts involving the BSD.

4. It was further part of the manner and means of the conspiracy for **MCGILBRA** to profit and benefit from exerting her improper influence in the awarding and administration of contracts involving the BSD.

5. It was further part of the manner and means of the conspiracy for **MCGILBRA** to conceal the true nature and extent of her relationship with various contractors.

**D. OVERT ACTS**

6. In furtherance of the conspiracy, and to effect the objects thereof, the defendant committed and caused to be committed the following overt acts, among others, in the Houston Division of the Southern District of Texas and elsewhere:

(1) On or about February 7, 2001, Garland Hardeman sent by U.S. Mail a letter regarding the initiation of a consulting relationship with the Development Company, a company doing and seeking to do business with Houston through the BSD.

(2) On or about March 19, 2001, a representative of the Development Company in Houston, Texas sent an email to Hardeman in California regarding

their consulting contract and the business Hardeman stated he was trying to develop for the Development Company.

(3) On or about April 18, 2001, a representative of the Development Company in Houston, Texas sent an email to Hardeman in California confirming that the final version of the consulting contract they had agreed to was being sent to Hardeman that day.

(4) On or about April 21, 2001, Hardeman countersigned the consulting agreement between the Development Company and Hardeman as of April 1, 2001 providing for monthly payments to Hardeman of $3,000.

(5) On or about May 1, 2001, Hardeman sent to **MCGILBRA** by U.S. Mail from California to Houston, Texas a check in the amount of $500.00 representing a portion of the payment he received from the Development Company.

(6) On or about October 9, 2001, Hardeman sent to **MCGILBRA** by Federal Express from California to Houston, Texas, funds amounting to approximately $600.00, representing a portion of the payment Hardeman received from the Development Company.

(7) On or about December 10, 2001, Hardeman sent to **MCGILBRA** by Federal Express from California to Houston, Texas, funds amounting to

approximately $600.00, representing a portion of the payment he received from the Development Company.

(8) On or about January 28, 2002, Hardeman and the Development Company entered into a modification of their agreement whereby the Development Company retained Hardeman "to assist and provide advice to the Development Company as the Company pursues approval of an agreement with the City of Houston" to develop a project known as the Superstation being administered by the BSD. Under the agreement, Hardeman was to be compensated $250,000 for securing the project for the Development Company.

(9) On or about January 28, 2002, **MCGILBRA** entered into a private agreement with Hardeman to receive a portion of the funds paid to Hardeman.

(10) In or about the Fall of 2002, **MCGILBRA** assisted Contractor, Inc. in negotiations to obtain a subcontract for Houston's energy services.

(11) On or about October 16, 2002, **MCGILBRA** caused to be filed a false and misleading Financial Disclosure Statement with Houston.

(12) On or about December 5, 2002, **MCGILBRA** caused to be filed a false and misleading revised Financial Disclosure Statement with Houston.

(13) On or about November 11, 2002, the president of Contractor, Inc., entered into a memorandum of understanding with an energy services contractor

to perform services as a subcontractor in connection with a program to improve efficiency of street lights in Houston as part of a demand side energy contract being overseen by BSD and **MCGILBRA**.

(14) In or about the Fall 2002, Contractor, Inc.'s President gave **MCGILBRA** approximately $6,000 in cash in Houston to assist her with temporary housing expenses for her and her family.

(15) On or about December 21, 2002, **MCGILBRA** in Houston spoke by telephone to the president of Contractor, Inc. and asked him for some further financial assistance for temporary housing expenses for her and her family.

(16) In or about April, 2003, a Master Agreement was signed between Contractor, Inc. and a contractor with Houston under which energy management services were to be provided to Houston.

In violation of Title 18, United States Code, Section 371.

MICHAEL T. SHELBY
United States Attorney

By: _____
EDWARD F. GALLAGHER
Assistant United States Attorney

NOEL L. HILLMAN
Chief, Public Integrity Section

By: _____
JAMES A. CROWELL IV
Trial Attorney